UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 15-cv-2209 (PAM/HB)

Steven Allan Housman
and Russell Lynn Norton,

          Plaintiffs,

v.

Lucinda Jesson, Anne Barry,
Nancy A. Johnston, Terrance K. Kneisel,
Kevin D. Moser, Elizabeth J. Barbo,
Scott G. Benoit, Susan L. Johnson,
David Bornus, Jamie Jungers,
Thane D. Murphy, Beth A. Virden,
Diana E. Magaard, Ann Zimmerman,
Brian S. Ninneman, and John and Jane Doe,
in their individual and official capacities.

          Defendants.

**MEMORANDUM AND ORDER**

_____

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Steven Allan Housman and Russell Lynn Norton are civilly committed to the Minnesota Sex Offender Program ("MSOP") and currently reside at a treatment facility in Moose Lake, Minnesota. (Compl. (Docket No. 1) at 1.) They bring this action under 42 U.S.C. §§ 1983 and 1985 for alleged violations of their constitutional rights. (Id.) According to Plaintiffs, on June 19, 2010, MSOP staff charged Plaintiffs with attempted escape from the treatment facility and transferred them to the Carlton County Jail where they spent approximately eight months in custody. (Id. at 11,12.) After

returning to the treatment facility on February 16, 2011, MSOP staff placed Plaintiffs in the treatment facility's Omega Unit for the next ten months. (Id.) Plaintiffs claim that their placement in the Omega Unit, and the treatment they received while there, violated their constitutional rights.

### A. Housman

Housman alleges mistreatment in five ways. First, Housman claims that MSOP staff damaged or deprived him of some of his personal property. Specifically, Housman claims that he did not receive his prosthetic left leg for the first six months he stayed in the Omega Unit. (Id. at 11.) Because of this, Housman suffered from severe leg and back pain. (Id.) Housman does not specifically identify any other personal property MSOP staff damaged or deprived him of. (Id.) Second, Housman claims that MSOP staff sprayed him with tear gas by "turning the air off to the Omega Unit and the gas would come seeping in under the cell doors and through the air vents." (Id.) Third, Housman claims that MSOP staff "punished" him by only allowing him 50 minutes of recreation time a day. (Id. at 12.) Fourth, Housman claims that MSOP staff "punished" him by having a guard escort him when he had appointments off the Omega Unit. (Id.) Fifth, Housman claims that MSOP staff "punished" him with 30 days of random room searches. (Id.) Housman claims that he suffered from stomach pain and headaches as a result of his stay in the Omega Unit. (Id.)

### B. Norton

Norton alleges mistreatment in three ways. First, Norton claims that MSOP staff damaged or deprived him of some of his personal property, although Norton does not

identify what property MSOP damaged or deprived him of. (Id. at 12-13.) Second, Norton claims that he "witnessed" other patients being "abused," often with tear gas. (Id. at 13.) Third, Norton claims that MSOP staff required a guard escort him when he had appointments off the Omega Unit. (Id.) Norton claims that he suffered from sleep trouble, stomach pain, headaches, and anxiety as a result of his stay in the Omega Unit. (Id.)

### C. Constitutional Claims and Relief Sought

Plaintiffs do not specifically identify which of their constitutional rights MSOP staff violated based on these allegations. Rather, Plaintiffs generally state that their allegations amount to violations of "the United States Constitution Prohibition against Cruel and Unusual Punishment, Prohibition against Double Jeopardy, and denial of Plaintiff's Due Process rights." (Id. at 2.) Liberally construed, Plaintiffs allege that Defendants violated their Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiffs also allege a conspiracy under 42 U.S.C. § 1985.

Plaintiffs seek $5 million in compensatory damages and $10 million in punitive damages against Defendants in their individual capacities. Plaintiffs seek declaratory and injunctive relief against Defendants in their official capacities in the form of permanently discontinuing the use of the Omega Unit. (Id. at 15.)

### D. Defendants

Based on these alleged constitutional violations, Plaintiffs sued various MSOP and Minnesota Department of Human Services ("DHS") officials in their official and individual capacities. (Id. at 2.) Several Defendants, however, no longer hold the

positions in which they were sued. When a public officer who is a party in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted. Fed. R. Civ. P. 25(d). Therefore, for purposes of this lawsuit, Emily Johnson Piper replaces Lucinda Jesson as DHS commissioner; Nancy Johnston replaces Anne Barry as DHS Deputy Commissioner; Shelby Richardson replaces Nancy Johnston as MSOP executive director; Steven Sayovitz replaces Terrance Kneisel as security program manager at MSOP's Moose Lake facility ("MSOP-ML"); Terrance Kneisel replaces Elizabeth Barbo as assistant facility director at MSOP-ML; Laurie Severson replaces Brian Ninneman as Unit Director of the Omega Unit; Ken Stewart replaces Jamie Jungers as assistant director of the Office of Special Investigations; and Rebecca Benson replaces Beth Virden as investigation specialist at MSOP-ML. In addition, the positions Susan Johnson, Diana Magaard, and Ann Zimmerman once held are presently vacant. Plaintiffs' official capacity claims against Jesson, Barry, Barbo, Ninneman, Jungers, Johnson, Magaard, and Zimmerman are therefore dismissed with prejudice.

On September 1, 2016, the Minnesota Attorney General's Office filed a Motion to Dismiss on behalf of all Defendants in their official capacities and on behalf of Defendants Murphy, Moser, Ninneman, Magaard, Benoit, Johnson, and Kneisel in their individual capacities. These Defendants argue that Plaintiffs fail to state a claim upon which relief may be granted. As to the remaining Defendants in their individual capacities, Plaintiffs have not effectuated service. This Order serves as notice to Plaintiffs under Rule 4(m) that they have failed to effectuate service on these Defendants

within 90 days of filing their Complaint, if they do not effect service by January 3, 2017, their claims will be dismissed without prejudice.

**DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the Court must accept factual allegations as true, Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012), but it need not give effect to those that simply assert legal conclusions, McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678.

**A.    Norton's Standing**

Before addressing the merits of Plaintiffs' constitutional claims, the Court must determine whether Norton has standing to raise these claims in the first instance. To have standing, Norton must demonstrate, among other things, an injury in fact. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Norton's allegation that he witnessed other patients being abused with tear gas does not allege an injury in fact. Because Norton has failed to establish standing, the Court has no jurisdiction over that claim. Any claims related to this allegation are therefore dismissed with prejudice.

### B.  Fourth Amendment

The Court construes Housman's allegation that MSOP staff "punished" him with 30 days of random room searches to be a claim under the Fourth Amendment's prohibition against unreasonable searches and seizures.  But random room searches at MSOP do not violate the Fourth Amendment.  See, e.g., Pyron v. Ludeman, No. 10cv3759 (PJS/JJG), 2011 WL 3293523, at *6 (D. Minn. June 6, 2011), report and recommendation adopted, 2011 WL 3290365 (D. Minn. July 29, 2011), aff'd sub nom. Hollie v. Ludeman, 450 F. App'x 555 (8th Cir. 2012) (per curiam).  Housman has therefore failed to state a Fourth Amendment claim upon which relief may be granted.

### C.  Fifth Amendment

Plaintiffs assert that their placement in the Omega Unit, after spending eight months in the Carlton County Jail, constituted "punishment" that violated the Fifth Amendment's Double Jeopardy Clause.  But the Double Jeopardy Clause is not implicated in the application of prison disciplinary actions because such matters are not criminal in nature.  Jones v. Jett, No. 10cv4201 (MJD/AJB), 2011 WL 5507222, at *3 (D. Minn. Aug. 12, 2011), report and recommendation adopted, 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 F. App'x 522 (8th Cir. 2012).  Although Plaintiffs are not prisoners, the same reasoning applies with even greater force to civilly committed individuals.  Thus, Plaintiffs' placement in the Omega Unit is not a violation of the Fifth Amendment's Double Jeopardy Clause.  Plaintiffs have failed to state a Fifth Amendment claim upon which relief may be granted.

D.  **Eighth Amendment**

Plaintiffs also assert that their placement in the Omega Unit violated the Eighth Amendment's prohibition against cruel and unusual punishment. But the Eighth Amendment applies only to persons who are in custody as punishment for a criminal conviction. Semler v. Ludeman, No. 09cv732 (ADM/SRN), 2010 WL 145275, at *22 (D. Minn. Jan. 8, 2010). Because Plaintiffs are civilly committed to MSOP and not in custody as punishment for a criminal conviction, the Eighth Amendment does not apply. Plaintiffs have therefore failed to state an Eighth Amendment claim upon which relief may be granted.

E.  **Fourteenth Amendment**

A challenge to the conditions of a civilly committed patient's confinement is properly analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. Holly v. Anderson, No. 04cv1489 (JMR/FLN), 2008 WL 1773093, at *5 (D. Minn. Apr. 15, 2008) (citing Youngberg v. Romeo, 457 U.S. 307, 315-17 (1982). In evaluating the constitutionality of those conditions, the proper inquiry is whether the conditions amount to punishment. Id. If a particular condition is reasonably related to a legitimate government objective, it does not amount to punishment. Bell v. Wolfish, 441 U.S. 520, 539 (1979). For example, restricting a civilly committed individual's recreation time or placing physical restraints on MSOP patients after a recent escape attempt does not amount to a Fourteenth Amendment violation. See Favors v. Hoover, No. 13cv428 (JRT/LIB), 2014 WL 4954687, at *15 (D. Minn. Sept. 30, 2014); Semler, 2010 WL 145275, at *28.

7

Housman's allegation that he was punished with limited recreation time, and Housman and Norton's allegation that they were escorted by a guard while off the Omega Unit, are therefore not Fourteenth Amendment violations. But Housman's allegation that MSOP staff refused to return his prosthetic leg for six months, and his allegation that MSOP staff sprayed him with tear gas could plausibly constitute punishment. At this stage of the litigation, taking Housman's allegations as true, those allegations do state a Fourteenth Amendment claim upon which relief may be granted.

As for Plaintiffs' procedural due process claims, the threshold question is whether the plaintiff was deprived of a protected liberty or property interest. Pyron, 2011 WL 3293523, at *7 (citing Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995).

In the Complaint, Norton completely fails to identify what property MSOP staff damaged or deprived him of. Without providing that information, he cannot claim that MSOP deprived him of a protected property interest. Norton therefore fails to state a procedural due process claim upon which relief may be granted.

Housman does identify at least one piece of property that MSOP staff refused to return to him: his prosthetic leg. But even assuming Housman has a protected liberty or property interest, Minnesota has established an available and adequate state post-deprivation remedy. See Minn. Stat. § 246B.03, subd. 3. "Where such meaningful remedies exist, neither negligent nor intentional deprivations of property violate due process." Pyron, 2011 WL 3293523, at *7 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984). Furthermore, the Complaint merely states, in a conclusory fashion, that any

8

grievances filed with MSOP staff are usually denied without adequate review or due process. (Compl. at 3.) Without more, Housman has not "nudged [his] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Housman therefore fails to state a procedural due process claim upon which relief may be granted.

### F.   Personal Involvement

Although Housman succeeds in stating a Fourteenth Amendment substantive due process claim, he does not state a claim as to all Defendants. A government official cannot be vicariously liable for the acts of his subordinates under the doctrine of respondeat superior unless he was personally involved in the unconstitutional acts. Semler, 2010 WL 145275, at *7 (citations omitted).

Housman raises only bare allegations against certain Defendants that they were responsible for administration and oversight of the MSOP. He does not state with any specificity how these Defendants were personally involved in failing to return his prosthetic leg or spraying him with tear gas. Housman does, however, allege that certain Defendants were "intimately involved in the policies and practices concerning the conditions of confinement" in the Omega Unit and directly participated in the punishment. (Compl. at 7-10.) These Defendants include Thane Murphy, in both his official and individual capacities, Diana Magaard in her individual capacity, Brian Ninneman, in his individual capacity, and John and Jane Doe,[1] in both their individual

---

[1] "[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained

and official capacities. Accordingly, Housman's Fourteenth Amendment substsnative due process claims only against these Defendants survive the Motion to Dismiss.

### G. Conspiracy Claim

Finally, Plaintiffs claim that Defendants conspired against them in violation of 42 U.S.C. § 1985. To state a civil rights conspiracy claim under § 1985, Plaintiffs must allege "(1) a conspiracy; (2) for the purpose of depriving another of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004) (internal quotation marks omitted). A civil rights conspiracy claim also requires proof of a class-based animus. Id.

Plaintiffs have utterly failed to allege any facts supporting the elements of a conspiracy claim or proof of a class-based animus. Plaintiffs have therefore failed to state a civil rights conspiracy claim upon which relief may be granted.

**CONCLUSION**

Housman's allegations that Defendants Murphy, Magaard, Ninneman, and John and Jane Doe were personally involved in spraying him with tear gas and refusing to return his prosthetic leg plausibly state a claim under the Fourteenth Amendment upon

---

after reasonable discovery." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

which relief may be granted.  Plaintiffs have failed to state a claim as to all other claims.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**;

2. Housman's Fourteenth Amendment claims against Defendants Murphy, Magaard, Ninneman, and John and Jane Doe proceed to discovery;

3. All claims other than Housman's Fourteenth Amendment claim against Defendants Murphy, Magaard, Ninneman, and John and Jane Doe are **DISMISSED with prejudice**;

4. Plaintiffs have until January 3, 2017, to effectuate service on Defendants who have not yet been served or their claims against those Defendants will be dismissed without prejudice.

Dated:  December 13, 2016            *s/ Paul A. Magnuson*
                                     Paul A. Magnuson
                                     United States District Court Judge